IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ERIC CARRILLO,
    Petitioner,

v().    Case No. 3:24-cv-525/TKW/MAL

WARDEN FPC PENSACOLA,

    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

In his petition for writ of habeas corpus under 28 U.S.C. § 2241, Petitioner Eric Carrillo seeks application of sentencing credits under the First Step Act (FSA) and Second Chance Act (SCA), which he asserts would entitle him to immediate transfer to prerelease custody or home confinement. ECF No. 2. The case was ripe for review following the Government's response in opposition, ECF No. 9, and Carrillo's reply. ECF No. 10. Carrillo then filed an "Omnibus Motion" to provide additional argument based on intervening changes in BOP policy and his resulting position that the Warden's response should be stricken. ECF No. 11. The Omnibus Motion will be granted to the extent his motion is accepted as filed and his arguments have been considered.

After careful consideration of the record and relevant law, I recommend the § 2241 petition be dismissed because Carrillo did not exhaust his administrative

remedies before filing his petition and he has not demonstrated extraordinary circumstances to excuse his failure to exhaust. Alternatively, even if Carrillo had exhausted, he is not entitled to relief on the merits.

## I. BACKGROUND

On March 28, 2023, the United States District Court for the Southern District of Texas sentenced Carrillo to a term of 46 months' imprisonment after his conviction for money laundering in violation of 18 U.S.C. § 1956(a)(2)(a) and 2. S.D. Tex. Case 7:18cr960-5, ECF No. 1280. He remained out on bond while his case was pending, ECF No. 2 at 2, and it appears he remained free until he was committed to custody on June 29, 2023. ECF No. 9-1 at 33. Carrillo is currently incarcerated at the Federal Prison Camp in Pensacola Florida with a projected release date of January 24, 2026. *See* https://www.bop.gov/inmateloc/.

## II. DISCUSSION

### A. Carrillo's claims

In his petition, dated October 18, 2024, Carrillo seeks an order directing the Bureau of Prisons to immediately move him to a Residential Reentry Center (RRC). ECF No. 2 at 6. Carrillo asserts he has earned 490 days of Federal Time Credits under the FSA and an additional 365 days of credit towards time in a Residential Reentry Center under the SCA. *Id.* at 2. It is not clear how he came up with the 490-

day figure for FSA credits. He does not challenge any of the calculations in the FSA Time Credit Assessment attached to his petition, which show the credits he has earned during specific periods. *Id.* at 9-10.

Carrillo notes his conditional release date of October 21, 2024 (taken from the FSA Time Credit Assessment), has passed. *Id.* at 6, 11. Carrillo argues that the Bureau should not be allowed to rely on a lack of bedspace as a reason to delay his transfer to prerelease custody, and the Court should order the BOP to send him to home confinement if space is otherwise unavailable. *Id*. at 6.

## B. Exhaustion of administrative remedies

### 1. **Exhaustion is required before filing a § 2241 petition.**

Prisoners are required to exhaust their administrative remedies before filing a § 2241 petition. *Santiago-Lugo v. Warden*, 785 F.3d 467, 471, 474-75 (11th Cir. 2015). Failure to exhaust is not a jurisdictional defect; rather, it is a defense that a respondent may assert or choose to waive. *Id.* The Warden has not waived the defense in this case.

The BOP's multi-tiered administrative remedy procedure, which includes one level of informal and three levels of formal review, allows an inmate to raise issues related to any aspect of imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. To fully exhaust, an inmate must properly complete each step of the BOP administrative

remedy process, which includes complying with the prison's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A lack of response to an administrative remedy does not prevent an inmate from pursing further relief, because the regulations provide that if the inmate does not receive a response within the time allotted for reply at any level, including extension, the inmate may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18.

### 2. Review of a claim of failure to exhaust administrative remedies.

Adjudicating a motion to dismiss for failure to exhaust involves two steps. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082. In those cases where the case is not subject to dismissal at step one, the Court proceeds to step two. Step two requires the Court "to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. Although the Warden's response is not styled as a motion, the same analysis applies here. This case may be resolved at the first step because the record clearly demonstrates Carrillo did not exhaust his administrative remedies before filing the instant petition.

### 3. <u>Carrillo has not exhausted his administrative remedies.</u>

The declaration of Bonnie Scoggins, the Warden's Secretary at FPC Pensacola, reflects Carrillo has filed no administrative remedies. ECF No. 9-2 at ¶ 10. Carrillo himself admits he did not exhaust his administrative remedies, but he claims that exhaustion is futile because his conditional release date has passed. ECF No. 2 at 6; ECF No. 10 at 3.

Exhaustion of administrative remedies is not merely a gratuitous hurdle imposed to inconvenience litigants. Rather, as recognized by the Supreme Court, it serves important purposes. First, it "protects administrative agency authority," giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations and citation omitted). Second, it promotes efficiency because claims can sometimes be resolved at the agency level, obviating the need to proceed to federal court. *Id.* "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* (citation omitted).

The fact that Carrillo believed his release date has passed does not render exhaustion futile. Had Carrillo pursued administrative remedies, he could have learned that his claim has no merit. Because Carrillo has not stated any other reason

for applying a futility exception, and he does not present extraordinary circumstances that would justify exemption from the exhaustion requirement, his petition is subject to dismissal for his failure to exhaust administrative remedies.

### C. Carrillo has not yet earned sufficient FSA credits to apply them.

Under the FSA, an eligible inmate who successfully participates in evidence-based recidivism reduction programs or productive activities earns time credits to be applied toward placement in prerelease custody (such as a residential reentry center, commonly known as a halfway house or RRC, or home confinement) or toward early release to a term of supervised release. See 18 U.S.C. §§ 3624(g)(1)-(3), 3632(d)(4). Inmates may earn ten, or in some instances 15, days of credit for every 30 days of successful programming. 18 U.S.C. § 3632(d)(4). One year is the maximum amount of FSA time credits that can be applied toward early release from prison and placement on supervised release. 18 U.S.C. § 3624(g)(3). Additional earned FSA time credits shall be applied toward time in prerelease custody. 18 U.S.C. § 3632(a)(4)(C).

The SCA, on the other hand, provides for placement in prerelease custody for up to 12 months.[1] See 18 U.S.C. § 3624(c)(1). This placement, while possible, is

---

[1] According to the Federal Bureau of Prisons website:

> On March 31, 2025, the Federal Bureau of Prisons (BOP) issued a memorandum announcing limitations on Second Chance Act (SCA) placements in Residential

not guaranteed. *Id.* The BOP retains discretion to determine where and when to place an inmate in a community correctional facility. *See, e.g.*, *Freedland v. MacKelburg,* No. 5:21-cv-56-TKW/MAF, 2021 WL 3624707, at *4 (N.D. Fla. July 23, 2021) (denying habeas petition for failure to exhaust and because petitioner had "not shown the BOP abused its discretion in not allowing his transfer to an RRC" under the SCA), *report and recommendation adopted,* No. 5:21-cv-56-TKW-MAF, 2021 WL 3619928 (N.D. Fla. Aug. 16, 2021); *Bromfield v. Dobbs*, No. 18-CV-22618-SCOLA, 2019 WL 404048, at *5 (S.D. Fla. Jan. 16, 2019) (noting that a 12-month placement under the SCA is not guaranteed, and it is within the discretion of the BOP whether to place a prisoner in an RRC, and if so for how long) (citing cases), *report and recommendation adopted*, No. 18-22618-CIV, 2019 WL 399899 (S.D. Fla. Jan. 31, 2019); *Robinson v. Warden, FCI Danbury*, No. 3:24-CV-1167 (SRU), 2025 WL 777275, at *4 (D. Conn. Mar. 11, 2025) (finding petitioner had no enforceable interest in her transfer to prerelease custody on her earliest date of eligibility under the SCA).

---

Reentry Centers. Based on concerns about how these limitations impact the population, BOP will not proceed with the planned changes to limit SCA placement to 60 days. A new memo was issued today, April 10, 2025, rescinding the previous guidance.

*See* https://www.bop.gov/news/20250410-second-chance-act-sca-placements.jsp. Therefore, the concerns raised in Carrillo's omnibus motion (ECF No. 11) about the changes made in the BOP's March 31, 2025 memo are moot.

The BOP provides inmates with a multi-page "FSA Time Credit Assessment." This document provides a breakdown of the credits earned under the FSA and credits given under the SCA and how those credits can be applied. See ECF No. 2 at 9-11. It includes a "Conditional Transfer to Community Date," which represents the best-case scenario for an inmate's placement date in prerelease custody based on the maximum number of FSA credits the inmate may potentially earn and have applied before release, and SCA credits awarded. *Id.* at 2.

Carrillo's October 8, 2024, FSA Time Credit Assessment, which he relies upon for his conditional placement date and which he attached to his petition, reflects that he earned 195 days of FSA time credits from the start date through October 8, 2024. ECF No. 2 at 9. Although Carrillo may have earned 195 days of FSA credit,[2] he is not eligible to have them applied now. FSA time credits become eligible to be *applied* only when credits are earned "in an amount that is equal to the remainder of [the] imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). The time between October 8, 2024, (when Carrillo had earned 195 days of FSA credit) and his October 21, 2026, good conduct time release date is 743 days. Thus, as of October 8, 2024, Carrillo did not earn FSA credit in an amount equal to the remainder of his term of imprisonment, and those 195 days of FSA credits could not be applied on October

---

[2] Carrillo's offenses of conviction do not render him ineligible to earn FSA credits under 18 U.S.C. § 3632(d)(4)(D).

8, 2024.

The 195 days of FSA credit could be applied on April 9, 2026, as reflected in the "FSA Projected Release Date" of April 9, 2026. ECF No. 2 at 11. On that date, Carrillo would have earned 195 days of FSA credits and would have 195 days remaining until the end of his sentence on October 21, 2026.

The gap between Carrillo's earned FSA credits and the days until his release date becomes smaller and smaller as more time passes and he earns more credit. According to the FSA Time Credit Assessment, assuming Carrillo continues to earn 15 days of FSA credits each month, by the time he reaches his FSA Conditional Release Date of October 21, 2025, he will have earned an additional 170 days of FSA credit to be applied toward early release, giving him a total of 365 FSA credits (195 + 170) to be applied toward release.[3] *Id.* On that date, he will also have 365

---

[3] The computation of 170 days FSA credit is not exact, and it is possible that Carrillo would also have 16 FSA Conditional Placement Days to apply toward early placement in prerelease custody. The court makes this estimate based on the time period between October 8, 2024, and October 21, 2025, which is approximately 12.4 months. If Carrillo earns 15 FSA credits every 30 days, and if the FSA calculation can be prorated for periods less than 30 days, he will have earned an additional 186 FSA days by October 21, 2025 (15 days per month x 12.4 months). If 170 of those days are applied, together with the 195 days he has already earned, to reduce his sentence by one year (365 days), Carrillo could have 16 additional days of FSA credit left over to apply toward prerelease custody. It is not clear from this record why the 16 FSA days are not listed as FSA Conditional Placement Days on the FSA Time Credit Assessment. ECF No. 2 at 11. It could be that the FSA Conditional Placement Days were not noted because Carrillo is expected to receive a greater number of placement days under the SCA. In any event, Carrillo has not raised this issue in his petition. Furthermore, the issue is perfectly suited for resolution through the BOP's administrative remedy process, which Carrillo has not pursued.

days remaining until he is released from his sentence on October 26, 2026. Thus, he will have earned credits at least "in an amount that is equal to the remainder of [his] imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). As a result, the date of his release from the BOP changes from October 21, 2026 to October 21, 2025.

It is important to note that as of today, Carrillo is not eligible for application of his FSA credits because he has not earned credits "in an amount that is equal to the remainder of [his] imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Although this requirement makes calculations more difficult to apply, "there is some logic to this system" given that the ability to earn FSA credits can be lost for violating prison rules. *Rengifo-Valencia v. Warden, FCI Berlin*, No. 23-CV-082-SM, 2023 WL 3020871, at *2 (D.N.H. Apr. 20, 2023). "By waiting to apply earned FSA time credits until an inmate has accumulated a sufficient number to cover the remainder of his or her term of imprisonment, time credits 'can be immediately applied and would no longer be subject to loss for future prohibited acts.'" *Id.* (quoting *Milchin v. Warden*, No. 3:22-CV-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022)).

At present, Carrillo has not earned FSA credits in an amount equal to the remainder of his term of imprisonment, and his FSA credits therefore cannot yet be applied. Carrillo has not shown that the BOP has miscalculated or misapplied his

FSA credits. Therefore, Carrillo is not entitled to relief based on a miscalculation or misapplication of FSA credits.

### D. Carrillo is not entitled to earlier placement under the SCA

As noted above, SCA placement is not guaranteed. Additional days awarded to inmates under the SCA are discretionary and subject to consideration of various factors. 18 U.S.C. § 3621(b).

On September 18, 2024, which was one month before Carrillo filed his habeas petition, FPC Pensacola staff submitted an "Institutional Referral for CCC Placement" on Carrillo's behalf recommending a range of 121 to 150 days. ECF No. 9-1 at 2, 37-38. This referral noted that Carrillo had been individually assessed for RRC placement under the SCA using the five-factor review from 18 U.S.C. § 3621(b). *Id.* at 38. On or about October 7, 2024, the RRM in San Antonio, Texas assigned Carrillo a placement date of May 28, 2025, thus affording him 146 days of RRC Placement under the SCA and allowing his placement 146 days earlier than the otherwise applicable FSA Conditional Release Date of October 21, 2025. *Id.* at 3, see also "Inmate History Destnation (sic)," *id.* at 40 (reflecting an assignment to "Correctional Sys Edinburg Tx" beginning on May 28, 2025).

The SCA provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."

18 U.S.C. § 3624(c)(4). Section 3621, in turn, gives the Bureau of Prisons the authority to designate a federal prisoner's place of confinement. 18 U.S.C. § 3621(b). Section 3621(b) provides that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b).

Because of these statutory provisions, Carrillo has no enforceable interest in his transfer to prerelease custody at his earliest date of eligibility. At most, any review available would be to determine if the BOP abused its discretion. *See Freedland v. MacKelburg,* No. 5:21-cv-56-TKW/MAF, 2021 WL 3624707, at *4 (N.D. Fla. July 23, 2021) (applying abuse of discretion standard to the BOP's placement decision under the SCA), *report and recommendation adopted,* No. 5:21-cv-56-TKW-MAF, 2021 WL 3619928 (N.D. Fla. Aug. 16, 2021); *Robinson*, 2025 WL 777275, at *4 (acknowledging discretion given to the BOP for decisions regarding prerelease custody, and the lack of authority for a court to order transfer); *Bromfield*, 2019 WL 404048, at *5 (noting that a 12-month placement under the SCA is not guaranteed, and it is within the discretion of the BOP whether to place a prisoner in an RRC, and if so for how long) (citing cases), *report and recommendation adopted*, No. 18-22618-CIV, 2019 WL 399899 (S.D. Fla. Jan. 31, 2019); *see also United States v. Calderon*, 801 F. App'x 730, 731-32 (11th Cir. 2020)

(a district court lacks jurisdiction to grant a request for home confinement under the SCA); *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *4 (11th Cir. Feb. 6, 2023) ("[A]ssum[ing] without deciding that the denial of home confinement is reviewable to the same extent as denial of parole to a federal prisoner.").

Carrillo's allegations do not suggest any abuse of discretion on the part of the BOP in determining his placement under the SCA. While he speculates that he was denied an earlier placement because of lack of bed space at the halfway house (ECF No. 2 at 6), designation decisions under the SCA are subject to consideration of "the resources of the facility contemplated," 18 U.S.C. § 3621(b)(1), which, as relevant to this case, might reasonably be construed as encompassing bed space. Thus, Carrillo has failed to show that the BOP abused its discretion under the SCA or that he is otherwise entitled to the maximum 365 days of placement in a community correctional facility under the SCA.

### E. Request for Compassionate Release

In his reply, Carrillo states that if no other relief is available to him, he requests that this Court construe and grant his petition as a motion for "compassionate release." ECF No. 10 at 5. As part of the basis for his request he cites the lengthy delay between his arrest and ultimate guilty plea on the charges underlying his

current sentence. *See* ECF No. 2 at 2; ECF No. 10 at 5.

This Court is not the appropriate court to consider Carrillo's request for compassionate release. A request for compassionate release should be directed to Carrillo's sentencing court, filed as a motion in his criminal case, after exhausting administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Arnold v. Warden, FCC Coleman - Low*, No. 5:20-CV-199-OC-02PRL, 2020 WL 2425731, at *1 (M.D. Fla. May 12, 2020) (acknowledging change in law allowing defendants to file motions for compassionate release but finding that such motions must be filed in the sentencing court).

### F. Conclusion

Based on the foregoing, the Court finds that Carrillo has failed to show that the BOP miscalculated or misapplied any of his FSA credits. Carrillo has also failed to show that he is entitled to earlier placement under the SCA. Finally, he is not entitled to compassionate release from this Court.

Accordingly, it is ORDERED:

Carrillo's Omnibus Motion to supplement or amend Petitioner's reply and to strike response, ECF No. 11, is GRANTED only to the extent that leave to file is granted and the Court has considered the Omnibus Motion. Carrillo's incorporated motion to strike the Warden's response is DENIED.

And, it is respectfully RECOMMENDED:

1. Carrillo's petition under 28 U.S.C. § 2241 (ECF No. 2) be dismissed for failure to exhaust his administrative remedies or denied as he is not entitled to the relief requested.

2. The clerk be directed to close the case file.

DONE on April 21, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

## NOTICE TO THE PARTIES

The case was referred to me for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.